UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DURELL T. CRAIN,

    Plaintiff,

    v.                             CAUSE NO. 3:24-CV-984-HAB-APR

WILKS, et al.,

    Defendants.

OPINION AND ORDER

Durell T. Crain, a prisoner without a lawyer, filed a second amended complaint. ECF 21. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Crain's second amended complaint alleges that he has suffered from asthma since he was a child. He alleges that, sometime before he was transferred to Indiana State Prison ("ISP"), he developed pain in his lungs and heart, and shortness of breath. Blood work, EKG's and x-rays were performed, and he was provided with Tylenol for his complaints of pain.

He was transferred to ISP in October 2022. Between his arrival and July 2024, he saw Dr. Marthakis over five times. He told her what tests had been performed, but she told Crain that, pursuant to Centurion's policy, those tests would need to be repeated before she would consider ordering additional testing. He told her Tylenol was ineffective in controlling his pain, and he claims that Dr. Marthakis persisted with the same ineffective treatment for his symptoms. In July 2024, Crain told Dr. Marthakis that the pain was getting worse. She provided Singulair, which he had been taking for years, even though he told her it too was ineffective.

Crain also saw Nurse Practitioner Diane Thews in July 2024. This was the second time he saw her for his symptoms. He told her the pain was getting worse and the Tylenol was ineffective. He told her about his prior testing too, but she also said that pursuant to their policies, the tests would need to be repeated. So, she ordered x-rays and continued the Tylenol even though he said it was not helping.

Crain filed grievances and appealed. In response, Dr. Wilks and Dr. Stephanie Riley agreed that the treatment Crain had received was appropriate.

Crain was transferred to the Westville Correctional Facility ("WCF"). On November 14, 2024, Crain saw Dr. Liaw at WCF. Crain explained his symptoms. Dr. Liaw removed Crain from the Singulair that Dr. Marthakis put him on because Crain reported it was ineffective. Crain told Dr. Liaw about all of his prior testing. Dr. Liaw told him to "calm down" and sent him back to his cell without pain medication or any orders for further testing.

2

On December 17, 2024, another x-ray was performed. In mid-December, Crain saw Dr. Liaw again. He complained that the pain was getting worse, but nothing more was done for him.

In December 2024 or January 2025, Crain was moved to a housing unit where he reports that the smoke levels from "toon" were higher.[1] Crain sent an emergency grievance to Warden Smiley telling him that the smoke made his breathing problems and lung pain worse. Inmates learned from Crain's filings with the court that smoke bothered him, and on January 16, 2025, inmates lit "wicks," which Crain describes as rolled up toilet paper. As a result, he was placed on breathing treatments. But those treatments were ineffective because he remained housed in a dorm with high levels of smoke.

On January 22, 2024, Crain saw Dr. Liaw while he was taking a breathing treatment. Crain asked Dr. Liaw to have him moved to a non-smoking block. Dr. Liaw said this decision was up to custody staff. Crain believes this was a lie because a captain at ISP told him otherwise.

On January 23, 2025, Crain saw Dr. Liaw for an appointment. Crain's blood pressure was high, and he was placed on medication to control his blood pressure. Dr. Liaw indicated that the smoke could be responsible for his elevated blood pressure. He again asked Dr. Liaw to have him moved, and he said he could not order that Crain be moved.

---

[1] This appears to be a reference to synthetic marijuana or spice, sometimes called Tunechi. *See* https://www.dictionary.com/e/famous-people/tunechi/ (last visited October 31, 2022) ("Tunechi is also a slang term for synthetic marijuana, sometimes called spice or K2.").

3

On January 27, 2025, Crain was pulled out of the pod for a breathing treatment because of smoke on the unit. A nurse recommended that Crain be moved, and he was moved, but there was smoke in that area too. He was moved yet again and found himself in a pod where his neighbor does not smoke or burn things.

Crain alleges that Warden Smiley knows of his health problems and knows (because Crain has asserted so in his filings) that there are high levels of smoking on pods B, C, and D. According to Crain, Warden Smiley has turned a blind eye to his needs and allowed officials to have him moved to a smoking pod.

Crain reports that he continues to have symptoms, but there has been no further testing, treatment, or pain relief provided. Crain is suing six defendants: Dr. Nancy Marthakis, Nurse Practitioner Diane Thews, Dr. Liaw, Centurion Regional Director Dr. Wilks, Centurion Regional Director Dr. Stephanie Riley, and Warden Jason Smiley. He seeks monetary damages. He also seeks an order that he remain in a non-smoking block and receive a bottom range pass due to his respiratory symptoms.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources,*

*Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate-indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-98 (internal quotations and citations omitted).

The law has "identified several circumstances that can be enough to show deliberate indifference" by a medical professional. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). "First, and most obvious, is [an] official's decision to ignore a request for medical assistance." *Id.* Second, an inmate can provide evidence the medical professional "persist[ed] in a course of treatment known to be ineffective." *Id.* at 730. Third, an inmate can provide evidence of "an inexplicable delay in treatment which serves no penological interest." *Id.*; *see also Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

*Crain's Allegations Against Dr. Marthakis and Nurse Practitioner Thews*

Crain is suing Dr. Nancy Marthakis and Nurse Practitioner Diane Thews due to alleged deficiencies in his medical care while he was housed at ISP. Crain alleges that he saw Dr. Marthakis five times, but Crain only discusses one visit with Dr. Marthakis in detail. When he saw Dr. Marthakis in July 2024, she renewed his Singular even though he told her it was ineffective. Crain further alleges that Dr. Marthakis had access to Crain's medical records and could see that his complaints regarding pain had been ongoing and that he already received x-rays, EKG's, and blood tests assess his condition. Thus, Crain opines that the Eighth Amendment required that Dr. Marthakis do something more for him.

Not all medical problems can be fully solved, whether in or out of prison. "To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

> Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations. A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition.

*Id.* (quotation marks and citation omitted). This is why courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (quotation marks and citation omitted). "[M]ere disagreement between a prisoner and his doctor, or even between two

6

medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), or "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). While Crain may have preferred that Dr. Marthakis order additional tests or prescribe alternative medication, the allegations in Crain's second amended complaint do not permit a plausible inference that Dr. Marthakis' decisions regarding Crain's care were a substantial departure from accepted professional judgment, practice, or standards or that they were not based on her medical judgment. She provided him with medication associated with his symptoms and determined that additional monitoring and testing would need to be performed before pursuing other treatment. Based on this information, the court can not conclude that Dr. Marthakis failed to provide constitutionally adequate care.

Crain is suing Nurse Practitioner Thews, whom he alleges treated him on two occasions, although he described only one of those occasions. Nurse Practitioner Thews saw Crain in response to his July 7, 2024, grievance. After he explained his symptoms, she ordered an x-ray and Tylenol. Crain has a diagnosis that explains his symptoms: asthma. While Crain seems to believe something further is wrong with him, testing to date has not revealed other problems. Once again, not all medical problems can be solved. Nothing here suggests that Nurse Practitioner Thews failed to exercise her medical

7

judgment in her July 7, 2024, encounter with Crain when she ordered an x-ray and prescribed Tylenol.

*Crain's Allegations Against Dr. Liaw*

Crain is also suing Dr. Liaw for alleged deficiencies in his care at WCF. At their first meeting, Dr. Liaw discontinued Crain's Singular because Crain reported it was ineffective. He ordered an x-ray that was performed the following month. He saw Crain for a follow up visit. While he declined to recommend that Crain be moved to a non-smoking pod, he prescribed high blood pressure medication when Crain presented with high blood pressure potentially related to smoke exposure. Additionally, breathing treatments were initiated. These facts do not allow a plausible inference that Dr. Liaw persisted in an ineffective course of treatment or otherwise failed to use his medical judgment in treating Crain's respiratory condition. Therefore, he will not be permitted to proceed against Dr. Liaw.

*Crain's Allegations Against Regional Directors Dr. Wilks and Dr. Stephanie Riley*

Crain has also named Dr. Wilks and Dr. Stephanie Riley, who are each regional medical directors, as defendants. Crain's only allegations against them are that they responded to his July 7, 2024, grievance by indicating that the care he received was appropriate.

To the extent that Crain is attempting to hold the medical directors liable because they oversee the providers, there is no general respondeat superior liability under 42

8

U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." Id. at 596. The amended complaint does not allege that the medical directors were personally involved in making decisions regarding Crain's medical care. A supervisor can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). The amended complaint does not allege facts from which it can be plausibly inferred that Crain received constitutionally inadequate medical care or that the medical directors facilitated, approved, condoned, or turned a blind eye to any constitutionally inadequate care.

*Crain's Allegations Against Warden Smiley and his Request for a Preliminary Injunction*

Crain does not allege that Warden Smiley was personally responsible for his medical care. He alleges that he sent Warden Smiley an emergency grievance after being transferred to a cell where he was exposed to smoke that he believed aggravated his condition. He further alleges that Warden Smiley allowed officers to move him to pods where there is significant smoke even after Crain told the warden that there are high levels of smoke in these pods. Warden Smiley's failure to respond to a single grievance complaining about the conditions in Crain's cell does not amount to deliberate indifference. Thus, Warden Smiley cannot be held personally liable.

Crain may have named Warden Smiley as a defendant because "the warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any

9

injunctive relief is carried out." *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). While this lawsuit is about the medical care Crain received from various providers, Crain asks that the court order that he be assigned to a block with no smoking[2] and that he be provided with a bottom range pass. Crain was already granted leave to proceed on an injunctive relief claim in another case related specifically to the condition of smoke in his cell. *See Crain v. Reagle*, 3:25-CV-95-PPS-JEM (filed Jan. 29, 2025). To allow him to proceed on the same claim here would be duplicative.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Crain's second amended complaint does not state a claim. In the absence of a complaint that states a claim, a plaintiff cannot demonstrate a reasonable likelihood of success on the merits and no preliminary injunction can be granted.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad

---

[2] Crain does not allege that prison policies permit smoking in these units. Rather, he alleges that inmates in violation of the prison's rules smoke illicit substances or burn toilet paper. It is not realistic to expect the warden to always control the unauthorized behavior of inmates in any dorm.

10

discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). Crain has been permitted two opportunities to amend his complaint. His allegations amount to a disagreement with the medical judgments of the providers who care for him, and there is no reason to think that Crain could state a claim if provided with another opportunity to amend his complaint. Thus, it would be futile to allow Crain to amend again, and this case will be dismissed.

*Crain's Emergency Motion*

Crain recently filed a motion he titled as "Emergency Motion for Court to Take Judicial Notice of Plaintiff's Motion for Court to Intervene on his Move to Cell B3-101 in Case Number 3:25-CV-380-PPS-JEM Sent to Law Library Supervisor on the week of 7-7-25 to E-file and & Subsequently Plaintiff Being Removed From His Breathing Treatments Out of Retaliation & Order to Continue 2X's A Day Treatment's." ECF 26. Crain did not file the motion asking for the court to intervene in this case. Furthermore, Crain has been told that he should not file motions to take notice. ECF 7; ECF 17. He has also been told that labeling motions as emergency motions when there is not an emergency is inappropriate and an abuse of the judicial process. ECF 17. He was cautioned that he should refrain from filing such motions in the future, and that failure to do so could result in sanctions. *Id.* When Crain persisted, the court issued an order including the following:

> Telling the court he filed something is not an emergency. Now that this has been explained to Crain, it is expected that he will cease filing inappropriate motions for notice and emergency motions. ***If he does not, they will be viewed as an abuse of the judicial process and he may be subject to***

11

> *sanctions, including but not limited to a monetary penalty, dismissal of this case, or a ban on filing in this court.* If Crain wants to verify his documents have been received, he can write the clerk and request a copy of his docket sheet; no motion is required.

ECF 20 (emphasis in original). Crain persists in filing inappropriate motions for notice and emergency motions. Even if his complaint stated a claim, his willful persistence in violating the court's order that he stop filing such motions would be a sufficient basis to dismiss this case. While this case is being dismissed for failure to state a claim, Crain is nonetheless cautioned that *he should refrain from filing such motions in any of his cases in the future*.

For these reasons, the court:

(1) DENIES Durell T. Crain's emergency motion (ECF 26); and

(2) DISMISSES this case pursuant to 28 U.S.C. § 1915A.

SO ORDERED on July 22, 2025.

s/Holly A. Brady  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT
